UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITEDHEALTHCARE OF THE ROCKIES, INC, a Utah corporation; and CARE IMPROVEMENT PLUS SOUTH-CENTRAL INSURANCE CO., a Nebraska corporation,<br><br>  Plaintiffs,<br><br>v.<br><br>DEAN CAMERON, in his official capacity as Director of the Idaho Department of Insurance,<br><br>  Defendant. | Case No. 1:25-cv-00665-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff UnitedHealthcare of the Rockies, Inc., and Care Improvement Plus South-Central Insurance Co.'s (collectively, "UHC") Motion for Preliminary Injunction. Dkt. 10.[1] Defendant Dean Cameron, as Director of the Idaho Department of Insurance ("the Director"), initiated administrative enforcement proceedings against UHC because UHC allegedly violated Idaho unfair competition law. UHC seeks a preliminary injunction or temporary restraining order to enjoin the Director's enforcement action, arguing that federal Medicare law preempts Idaho unfair competition

---

[1] Upon review, the Court finds the arguments adequately presented. In the interest of time and judicial efficiency, the Court dispenses with oral argument. *See* Local Rule 7.1.

MEMORANDUM DECISION AND ORDER - 1

law. Because the Court finds UHC has met its burden, and for the reasons stated more fully below, the Court GRANTS the Motion.

## II. BACKGROUND

The facts of this case parallel those in 1:25-cv-00638-DCN *PacificSource Community Health Plans v. Cameron* ("*PCHP*"). The Court takes judicial notice of the proceedings in *PCHP* as a case on its own docket. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

UHC is an insurer which offers Medicare Advantage insurance plans ("MA plans"). Like traditional Medicare, MA plans offer federally subsidized health insurance to senior citizens. Unlike traditional Medicare, however, MA plans are offered through private insurers called "MA organizations." *See* 42 C.F.R. § 422.2.

New customers can sign up for MA plans through Medicare.gov, by contacting the MA organization directly, or through insurance brokerages. MA organizations typically pay brokers commissions to incentivize the broker to refer potential beneficiaries to the MA organization. Congress has directed the Secretary of Health and Human Services, acting through the Centers for Medicare and Medicaid Services ("CMS"), to regulate the compensation MA organizations pay brokers. 42 U.S.C. § 1395w-21(j)(2)(D); 42 C.F.R. § 422.2274. CMS has set a ceiling on the amounts MA organizations can pay brokers, but it has not set a floor. *See* 42 C.F.R. § 422.2274(d) (*see also* Dkt. 13 (CMS position paper noting that MA organizations may set brokerage commissions at $0)).

In July 2025, UHC notified CMS that it anticipated paying commissions from $0 to the maximum amount allowable under federal regulations. Dkt. 10-1, at 9. Prior to open

enrollment for 2026, UHC notified its brokers that some of its plans were not eligible for commissions. *Id.* The Director alleges that UHC changed its commission structure as part of a holistic attempt to discourage enrollment in its MA Plans. Dkt. 10-5, at 4–5.

The Director responded to complaints against UHC (and similar other MA organizations) by issuing Bulletin No. 25-06. The Bulletin states that MA organizations which discouraged or impeded consumers from enrolling in their MA plans engaged in unfair competition under Idaho Code § 41-1321. The Bulletin listed several activities which the Director believed violate Idaho law. *PCHP* Dkt. 2-2, at 34–35.

The Director issued UHC an inquiry requesting information under Idaho Code §§ 41-247 on October 21, 2025. Dkt. 10-7, at 4. After rounds of emails, discussions, and partial disclosures, the Director filed administrative enforcement action 18-4775-25 against UHC, alleging that it failed to respond as required by Idaho law. *See generally* Dkt. 10-7.

After the Director submitted inquiries to UHC, but before he opened the administrative enforcement action, the Director issued UHC a cease-and-desist order (the "Order"). The Order notified UHC that it had violated Idaho Code § 41-1321 by indirectly discouraging Idaho consumers from enrolling in its plans. Dkt. 10-5, at 6. In particular, the Director alleged that UHC developed rates which account for commissions, charged Idaho consumers premiums accordingly, and then set the plans to noncommission; disincentivizing brokers, and making enrollment materials unavailable online. *Id.*

UHC filed this suit on November 21, 2025, seeking a declaration that federal law preempts Idaho Code § 41-1321 as applied to MA organizations. Dkt. 1. Shortly thereafter, UHC moved for a preliminary injunction and temporary restraining order prohibiting the

Director from proceeding with his enforcement actions until this Court resolves the preemption issue. Dkt. 10. Two days later, UHC moved to expedite consideration of the instant Motion. Dkt. 11. The Court granted that motion and expedited consideration. Dkt. 12.

The Director responded to the Motion for Preliminary Injunction. Dkt. 17. He has also moved to dismiss UHC's Complaint. Dkt. 14. Because the Director's defenses hinge in part on the Motion to Dismiss, and because the Court will consolidate briefing and hearings on the Motion to Dismiss with the Temporary Restraining Order entered today, the Motion will be discussed in passing. In pertinent part, the Director argues the Court should exercise its discretion to abstain under *Younger* until the pending state enforcement action concludes.

In the interest of time, the Court elects to decide the Motion for Temporary Restraining Order without the benefit of reply briefing. The matter is, therefore, ripe for review.

### III. LEGAL STANDARD

"The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *W. Watersheds Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1008 (D. Or. 2019) (cleaned up). A plaintiff seeking a temporary restraining order ("TRO") "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *CTIA-The Wireless Ass'n v.*

MEMORANDUM DECISION AND ORDER - 4

*City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining the standard for a preliminary injunction and temporary restraining order are the same). "Likelihood of success on the merits is the most important factor." *Fraihat v. United States Immigration & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

The Ninth Circuit applies the *Winter* factors on a sliding scale. A party that cannot show a likelihood of success on the merits may nonetheless obtain temporary relief "if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## IV. DISCUSSION

The parties disagree as to whether the Medicare Advantage preemption statute covers the Director's regulatory action. Because the Court finds UHC is likely to succeed in arguing that it does, the Court GRANTS UHC's Motion and issues a temporary restraining order accordingly.

### A. Temporary Restraining Order

UHC argues that the Medicare Advantage preemption statute, 42 U.S.C. § 1395w-26(b)(3), preempts Idaho from regulating MA organizations as outlined in the Bulletin and Order.

*1. Likelihood of Success on the Merits*

The Medicare Advantage preemption statute reads: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). "[A] 'standard' within the meaning of the preemption provision is a statutory provision or a regulation promulgated under the Act and published in the Code of Federal Regulations." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 n.20 (9th Cir. 2010). Section 1395w-26(b)(3) is exceedingly broad. If the federal standard regulates in the same domain as state law—even if the state law is consistent with the federal standard, and even if the state law is generally applicable—the state regulation is preempted. *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022).[2]

Determining whether the Director's actions are preempted, then, requires a two-step analysis. First, the Court must identify the conduct the Director seeks to regulate. Second, the Court must determine whether a standard (i.e. a federal statute or codified regulation) covers the same conduct. If the state regulation and federal standard cover the same conduct, the state regulation is preempted.

---

[2] The Director argues that his actions do not implicate 42 U.S.C. § 1395w-26(b)(3) at all because he is attempting to regulate the *conduct* of insurance companies rather than the *content* of their plans and regulations of the latter alone can be said to be "with respect to MA plans." Dkt. 17, at 5–7. Under *Aylward*, an express federal MA standard on the same subject as a state law is one "with respect to MA plans." 35 F.4th at 681. So long as CMS crafts a federal standard facially applicable to MA plans or MA organizations, and so long as that standard is not ultra vires Medicare Part C, the standard is "with respect to MA plans" within the meaning of Section 1395w-26(b)(3).

**MEMORANDUM DECISION AND ORDER - 6**

The Director argues that UHC has engaged in unfair trade practices by removing the enrollment application from its website to conceal the MA plan from consumers and by altering its contracts with agents to withhold commissions. Dkt. 10-5, at 6. UHC argues that several federal standards preempt Idaho Code title 41 chapter 13, two of which are relevant here: 42 C.F.R. § 422.2263 and –65, which concerns MA plan marketing and website requirements, and 42 C.F.R. § 422.2274, which governs broker compensation.

42 C.F.R. § 422.2263 regulates MA organizations' marketing activities and prohibits deceptive advertising practices (for example, prohibiting MA organizations from advertising benefits in markets where such benefits are not available, *see* 42 C.F.R. § 422.2263(8)). Section 422.2263 incorporates by reference rules regarding the content and intelligibility of MA plan marketing materials found at 42 C.F.R. § 422.2262. 42 C.F.R. § 422.2265, meanwhile, regulates MA organizations' websites.

UHC is likely to succeed in arguing that the requirements of 42 C.F.R. § 422.2263; 422.2265 regulate the same domain as Idaho law with respect to the delivery and clarity of enrollment materials. 42 C.F.R. § 422.2265(b)(8), for instance, requires MA organizations to make certain materials available on a website and requires some of them to be displayed "prominently." Whether UHC's choice to offer hardcopy-only enrollment forms is conceived of as "marketing" or "website design" or "delivery of required materials," a federal standard exists which prescribes UHC's duties with respect to what materials must be made available on UHC's website. Accordingly, UHC appears likely to succeed on its argument that if Idaho law prohibits it from removing the enrollment form from its website, Idaho law is preempted.

**MEMORANDUM DECISION AND ORDER - 7**

42 C.F.R. part 422 also regulates the domain of compensation to agents and brokers. 42 C.F.R. § 422.2274. Relevant here, § 422.2274 prohibits the creation of MA organization-agent contracts which have a "direct or indirect effect of creating an incentive that would reasonably be expected to inhibit an agent or broker's ability to objectively assess and recommend which plan best fits the health care needs of a beneficiary." 42 C.F.R. § 422.2274(c)(13).

Subsection (c)(13) almost reiterates the Director's concern regarding UHC. The Director claims terminating broker compensation for certain MA plans violates Idaho unfair competition law because it disincentivizes brokers from recommending UHC's plans for reasons unrelated to the health care needs of the consumer. The regulations appear to be consistent in spirit, but that consistency is irrelevant for the 42 U.S.C. § 1395w-26(b)(3) preemption analysis. *Aylward*, 35 F.4th at 681. What *does* matter is the fact that both regulations cover the same underlying conduct. Even if (c)(13) did not proscribe UHC's duty, subsection (d) provides that UHC may pay commissions at or below a regulatory ceiling, without listing a floor. 42 C.F.R. § 422.2274(d). UHC is, therefore, likely to succeed in arguing that 42 C.F.R. § 422.2274 preempts Idaho law as well.

This Order is issued in a preliminary posture. But at this juncture, UHC appears likely to succeed on the merits of its preemption argument. Because likelihood of success on the merits is the "most important factor" in determining whether to issue a TRO, *Fraihat*, 16 F.4th at 635, this fact weighs heavily in favor of granting the TRO.

*2. Irreparable Harm*

The second *Winter* factor is irreparable harm. Like an injunction, a TRO is an equitable remedy and will not issue if the plaintiff has an adequate remedy at law. *See Winter*, 555 U.S. at 22. In addition to being irreparable, the threatened harm must be sufficiently imminent to justify an award of emergency relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674–75 (9th Cir. 1988). Here, UHC is threatened with the allegation that it is violating Idaho law on fair competition, laws it can colorably claim do not apply to it. The resulting threat to its business reputation is an intangible harm that cannot be estimated or remedied after the fact. *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009). Moreover, the Order demonstrates the threat of loss of business reputation is sufficiently imminent to justify emergency relief. The Court accordingly finds irreparable harm here.

*3. Balance of the Equities and the Public Interest*

Finally, UHC must show that the balance of equities and the public interest favor temporary relief. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023). Ordinarily these factors are analyzed separately, but where a government entity opposes the relief, the balance of the equities and public interest merge. *Id.* This prong is the closest to tipping in the Director's favor. Promoting fair and accessible market activity is in the interest of the people of Idaho. Nonetheless, the federal public interest in a nationally consistent regulatory scheme for MA plans—and the Constitutional interest in upholding the Supremacy Clause—supersedes the Director's interest. *Am. Trucking Assoc's*, 559 F.3d at 1059–60. Because UHC appears likely to

succeed on its preemption claim, and because the public interest supports maintaining the Constitutional scheme of federal supremacy, the balance of the equities and public interest support temporary relief here.

Because the Court finds that UHC has met each of the *Winter* factors, the Court GRANTS the Motion as detailed below.

**B. Additional Matters**

Three concerns remain: the Director's request for an injunction bond, the relationship between this order and enforcement action 18-4775-25, and the arguments raised by the Director's pending Motion to Dismiss.

First, the Director seeks an injunction bond consistent with Fed. R. Civ. P. 65. The Court, therefore, orders UHC to give security in the amount of $5,000. UHC shall tender security to the Clerk of the Court within three business days of the date of this Order. UHC may post a security bond or deposit the full amount of the injunction bond with the United States Treasury. Should UHC tender the cash value of the security obligation to the Clerk of Court, the Clerk will hold that money pending further order of the Court.

Second, the Court anticipates that the parties will seek clarity on whether this Order enjoins DOI docket no. 18-4775-25. Because UHC does not identify any federal standard which governs an MA plan's obligation to respond to state insurance commissioner's administrative inquiries, the record does not show UHC's response obligation to be preempted by federal law. Nor has UHC shown why the Court should enjoin the Director's factually related but legally distinct enforcement actions. Accordingly, this Order does not extend to DOI docket no. 18-4775-25.

Finally, the Court notes that the Director's *Younger* abstention argument, raised in his Motion to Dismiss, remains unresolved. While the Court today finds that UHC is likely to succeed on the merits, the Court has not yet determined whether it will reach the merits in the first place. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). Accordingly, the Court expedites consideration of the Director's Motion to Dismiss and consolidates it with the hearing on the Motion for Preliminary Injunction.

## V. CONCLUSION

This will not be the last word on the interplay between state unfair competition law and federal standards. But for now, UHC appears likely to succeed on the merits, and the other *Winter* factors cut in its favor. Accordingly, action to preserve the status quo is appropriate.

## VI. ORDER

**IT IS THEREFORE ORDERED:**

1. UHC's Motion for Preliminary Injunction (Dkt. 10) is GRANTED as stated herein.

3. UHC is ORDERED to give security in the amount of $5,000. UHC may do so by posting a bond. In the alternative, UHC is authorized and ordered to deposit $5,000 in the United States Treasury as security. UHC will coordinate deposit with the Clerk of Court. Should UHC elect to deposit the cash value of the security obligation, the full amount of UHC's security obligation will remain on deposit with the United States Treasury pending further order of the Court.

3. The Director is ENJOINED, effective upon UHC giving security, from enforcing Idaho unfair competition law against UHC in administrative or judicial proceedings based on the interpretations given in the Cease and Desist Order or Bulletin 25-06 pending further order of the Court.

DATED: December 22, 2025

_____
David C. Nye
Chief U.S. District Court Judge