WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: (208) 389-9000

SUSAN COOK *(admitted pro hac vice)*
susan.cook@hoganlovells.com
MARLAN GOLDEN *(admitted pro hac vice)*
marlan.golden@hoganlovells.com
JACOB YOUNG *(admitted pro hac vice)*
jake.young@hoganlovells.com
DELIA SCOVILLE *(admitted pro hac vice)*
delia.scoville@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITEDHEALTHCARE OF THE ROCKIES, INC., and CARE IMPROVEMENT PLUS SOUTH CENTRAL INSURANCE COMPANY,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEAN CAMERON, in his official capacity as Director, Idaho Department of Insurance,<br><br>*Defendant*. | Case No. 1:25-CV-665-DCN<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.     ALL OF THE DEPARTMENT'S ACTIONS STEM FROM AN IMPERMISSIBLE ATTEMPT TO REGULATE MEDICARE ADVANTAGE PLANS. ................................................................................................................. 3

II.    UHC NEED NOT EXHAUST ADMINISTRATIVE REMEDIES. ................................... 5

    A.    The Department Fails to Identify an Applicable Exhaustion Requirement. ............ 5

    B.    Judicial Remedies Are Irrelevant to Exhaustion. ...................................................... 8

    C.    Exhaustion of Administrative Remedies Would Be Futile. ....................................... 9

    D.    Proceedings Before the Department of Insurance Are Constitutionally Void. ....... 12

    E.    This Case Is Not Purely a Declaratory Judgment Action. ...................................... 14

III.   THIS COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION. ......................................................................................................... 15

    A.    There Is No Ongoing State Proceeding. .................................................................. 15

    B.    There Is No Adequate State Remedy. ...................................................................... 17

    C.    Preemption Is Readily Apparent. ............................................................................. 18

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Ace Black Ranches, LLP v. EPA,*
    583 F. Supp. 3d 1313 (D. Idaho 2022) ..................................................................6

*Adibi v. California State Bd. of Pharmacy,*
    393 F. Supp. 2d 999 (N.D. Cal. 2005) ..................................................................18

*Affiliates, Inc. v. Armstrong,*
    No. 09-CV-149, 2010 WL 11646730 (D. Idaho Jan. 22, 2010) ............................13

*Agriesti v. MGM Grand Hotels, Inc.,*
    53 F.3d 1000 (9th Cir. 1995) ................................................................................16

*Akhtar v. Mesa,*
    698 F.3d 1202 (9th Cir. 2012) ................................................................................2

*Aleknagik Natives Ltd. v. Andrus,*
    648 F.2d 496 (9th Cir. 1980) ...........................................................................7, 14

*American Bankers Mgmt. Co., Inc. v. Heryford,*
    885 F.3d 629 (9th Cir. 2018) ................................................................................14

*American Trucking Ass'ns v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ..............................................................................14

*Association of Am. Med. Colls. v. United States,*
    217 F.3d 770 (9th Cir. 2000) ................................................................................16

*Aylward v. SelectHealth, Inc,*
    35 F.4th 673 (9th Cir. 2022) ................................................................................13

*Bacon v. Rutland Ry. Co.,*
    232 U.S. 134 (1914) ................................................................................................6

*Briggs v. Sullivan,*
    886 F.2d 1132 (9th Cir. 1989) ..............................................................................11

*Brillhart v. Excess Ins. Co. of Am.,*
    316 U.S. 491 (1942) ..............................................................................................14

*Champion Int'l Corp. v. Brown,*
    731 F.2d 1406 (9th Cir. 1984) ..............................................................................19

*Communities for a Better Env't v. Cenco Refin. Co.*,
 180 F. Supp. 2d 1062 (C.D. Cal. 2001) ...................................................................8

*Craig H. v. Blue Cross of Idaho*,
 732 F. Supp. 3d 1258 (D. Idaho 2024) ...................................................................2

*Do Sung Uhm v. Humana, Inc.*,
 620 F.3d 1134 (9th Cir. 2010) .................................................................3, 13, 20

*El Rescate Legal Servs., Inc. v. Executive Off. of Immigr. Rev.*,
 959 F.2d 742 (9th Cir. 1991) ...............................................................................10, 11

*Estate of Barrows v. Humana, Inc.*,
 No. 3:23-CV-654, 2025 WL 2375645 (W.D. Ky. Aug. 15, 2025)...........................3

*Estate of Lokken v. UnitedHealth Grp., Inc.*,
 766 F. Supp. 3d 835 (D. Minn. 2025).....................................................................3

*Ex parte Young*,
 209 U.S. 123 (1908).................................................................................................5

*Friends of the E. Lake Sammamish Trail v. City of Sammamish*,
 361 F. Supp. 2d 1260 (W.D. Wash. 2005)..............................................................12

*Fuchs v. State*,
 272 P.3d 1257 (Idaho 2012)....................................................................................6

*Gartrell Constr. Inc. v. Aubry*,
 940 F.2d 437 (9th Cir. 1991) ..................................................................................19

*Gibson v. Berryhill*,
 411 U.S. 564 (1973).................................................................................................8

*Godman v. USPS*,
 No. 1:24-CV-132, 2025 WL 2051773 (D. Idaho July 22, 2025)..............................6

*Harris v. Cassia County*,
 681 P.2d 988 (Idaho 1984).......................................................................................6

*Hawaii Newspaper Agency v. Bronster*,
 103 F.3d 742 (9th Cir. 1996) ..................................................................................14

*Hook v. Arizona Dep't of Corr.*,
 107 F.3d 1397 (9th Cir. 1997) ................................................................................6

*Hughes v. Attorney Gen. of Fla.*,
 377 F.3d 1258 (11th Cir. 2004) ..............................................................................19

*Huth v. Hartford Insurance Co. of the Midwest*,
   298 F.3d 800 (9th Cir. 2002) ................................................................15

*Jamgotchian v. Ferraro*,
   93 F.4th 1150 (9th Cir. 2024) ..............................................................8, 9

*Johnson v. Riverside Healthcare Sys., LP*,
   534 F.3d 1116 (9th Cir. 2008) ...............................................................2

*Johnson v. Shalala*,
   2 F.3d 918 (9th Cir. 1993) ......................................................................7

*Kitchens v. Bowen*,
   825 F.2d 1337 (9th Cir. 1987) ...............................................................16

*Mace v. Skinner*,
   34 F.3d 854 (9th Cir. 1994) ....................................................................7

*Matter of J. R. Simplot Co.*,
   640 F.2d 1134 (9th Cir. 1981) ................................................................6

*McBride Cotton & Cattle Corp. v. Veneman*,
   290 F.3d 973 (9th Cir. 2002) ..................................................................8

*McNeese v. Board of Ed. for Cmty. Unit Sch. Dist. 187*,
   373 U.S. 668 (1963) ...............................................................................6

*McNeil v. United States*,
   508 U.S. 106 (1993) ...............................................................................6

*Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emanuelli-Hernandez*,
   No. 19-CV-1940, 2021 WL 792742 (D.P.R. Mar. 1, 2021) .....................5

*Meredith v. Oregon*,
   321 F.3d 807 (9th Cir. 2003) ................................................................18

*Miles v. Idaho Power Co.*,
   778 P.2d 757 (Idaho 1989) .....................................................................6

*Monitor Fin., L.C. v. Wildlife Ridge Ests., LLC*,
   433 P.3d 183 (Idaho 2019) .....................................................................8

*Monroe v. Pape*,
   365 U.S. 167 (1961) ...............................................................................6

*Montes v. Thornburgh*,
   919 F.2d 531 (9th Cir. 1990) ..................................................................6

*Moore v. Urquhart*,
    899 F.3d 1094 (9th Cir. 2018) ...........................................................................9, 14

*N.D. ex rel. Parents Acting as Guardians Ad Litem v. Hawaii Dep't of Educ.*,
    600 F.3d 1104 (9th Cir. 2010) ...............................................................................12

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989)................................................................................................19

*Oregon Env't Council v. Oregon Dep't of Env't Quality*,
    775 F. Supp. 353 (D. Or. 1991) ...............................................................................8

*PacificSource Cmty. Health Plans v. Cameron*,
    No. 1:25-CV-638 (DCN), 2025 WL 3485747 (D. Idaho Dec. 4, 2025) ............10, 19

*Porter v. Board of Trs. of Manhattan Beach Unified Sch. Dist.*,
    307 F.3d 1064 (9th Cir. 2002) .................................................................................6

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
    579 U.S. 115 (2016)..................................................................................................5

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
    754 F.3d 754 (9th Cir. 2014) ...................................................................................8

*Roshan v. McCauley*,
    130 F.4th 780 (9th Cir. 2025) ...........................................................................15, 18

*Seattle Pac. Univ. v. Ferguson*,
    104 F.4th 50 (9th Cir. 2024) .............................................................................15, 16

*SEC v. G.C. George Sec., Inc.*,
    637 F.2d 685 (1981).................................................................................................7

*Sirva Relocation, LLC v. Richie*,
    794 F.3d 185 (1st Cir. 2015)..................................................................................17

*Sisley v. DEA*,
    11 F.4th 1029 (9th Cir. 2021) ..................................................................................6

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ...............................................................................16

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)............................................................................................15, 17

*Stockton v. Brown*,
    152 F.4th 1124 (9th Cir. 2025) ...............................................................................17

*UnitedHealthcare of the Rockies v. Cameron,*
No. 1:25-CV-665 (DCN), 2025 WL 3707229 (D. Idaho Dec. 22, 2025) ...............................19

*Vasquez v. Rackauckas,*
734 F.3d 1025 (9th Cir. 2013) ...............................................................................................14

*Vasquez-Rodriguez v. Garland,*
7 F.4th 888 (9th Cir. 2021) ...................................................................................................11

*Weinberger v. Salfi,*
422 U.S. 749 (1975).................................................................................................................7

*Weyerhaeuser Co. v. Marshall,*
592 F.2d 373 (7th Cir. 1979) ...................................................................................................6

*Williams v. Reed,*
604 U.S. 168 (2025).................................................................................................................9

*Winterberger v. General Teamsters Auto Truck Drivers & Helpers Loc. Union 162,*
558 F.2d 923 (9th Cir. 1977) .................................................................................................12

*Witzke v. Idaho State Bar,*
647 F. Supp. 3d 943 (D. Idaho 2022) ..............................................................................17, 18

*Woodfeathers, Inc. v. Washington County,*
180 F.3d 1017 (9th Cir. 1999) ....................................................................................15, 19, 20

**STATUTES:**

42 U.S.C. § 1395w-26(b)(2) .....................................................................................................19

42 U.S.C. § 1395w-26(b)(3) ...........................................................................................1, 13, 19

Idaho Code § 41-327.................................................................................................................18

**REGULATION:**

70 Fed. Reg. 4,588 (Jan. 28, 2005) ..........................................................................................13

**EXECUTIVE MATERIALS:**

CMS Medicare Managed Care Manual, Chapter 10.....................................................................4

## INTRODUCTION

The Medicare Advantage program is a federal program through and through.  A creature of federal statute, Medicare Advantage plans are subject to oversight by a federal agency that enforces a myriad of requirements spelled out in federal statutes, regulations, and interpretive guidance.  The program is so steeped in federal control that the Medicare Act explicitly prohibits state regulation over Medicare Advantage plans in all but two narrow areas: plan licensing and solvency.  42 U.S.C. § 1395w-26(b)(3).  The Centers for Medicare & Medicaid Services (CMS) has issued robust guidance clarifying the limited scope of these exceptions, including a memorandum issued only three weeks ago.

The Idaho Department of Insurance disputes none of this.  And yet it has aggressively pursued Medicare Advantage organizations—including Plaintiffs here ("UHC")—for refusing to go along with the State's patently unlawful attempts to usurp control over regulation of Medicare Advantage plans.  All of the Department's interlocking regulatory efforts spring from a three-page Bulletin issued barely two months ago, which announced out of the blue that Idaho's unfair-trade laws supposedly reach Medicare Advantage plans' marketing and enrollment practices.

Six days later, the Department sent an inquiry letter to UHC demanding that the company turn over information relating to UHC's marketing and enrollment actions in 2025, including the actuarial information regarding commissions it had submitted to CMS as part of the federal bid process.  UHC worked in good faith to provide the Department with most of the basic information it had requested, but did not provide its highly sensitive actuarial bid data submitted to CMS during the federal bid process because the state agency lacks jurisdiction to investigate Medicare Advantage plans' bids.  The Department responded by bringing an administrative complaint against the company seeking civil penalties, expressly invoking its newfound authority under the Bulletin

to regulate Medicare Advantage plans using state unfair trade practices law.  The Department also issued a final cease-and-desist order against UHC mandating the payment of commissions on its Medicare Advantage plans and changing its enrollment processes.  And in its motion to dismiss, the Department makes clear that it has not yet reached its regulatory zenith, threatening to delicense UHC from doing business in Idaho entirely.  While the Department has no basis to take such an action and no regulatory jurisdiction to demand the information requested, in an effort to avoid further escalation by the Department—and in light of this Court's partial TRO—UHC has now provided the requested actuarial data to the Department under protest.

Now, without a hint of irony, the Department argues that this Court's doors should be locked to UHC because after even more (unlawful) administrative processes play out, the agency might change its mind.  But UHC specifically asked the Department of Insurance to withdraw or stay the Department's spate of regulatory actions against it while this Court considered the pending motions, and the agency refused.  This dispute about the scope and preemptive effect of federal law belongs in federal court, so the Court should deny the motion to dismiss.

## ARGUMENT

The standard of review on a motion to dismiss is forgiving to the plaintiff.  "The Court, at this stage, must look at the Complaint, take the well-pleaded allegations as true, and determine if there is some legal barrier to any claim."  *Craig H. v. Blue Cross of Idaho*, 732 F. Supp. 3d 1258, 1268 (D. Idaho 2024).  It is not an onerous burden.  *Id.* at 1264 (quoting *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008)).  Insofar as the Department seeks dismissal for an alleged failure to exhaust administrative remedies, the court may also "look beyond the pleadings" and consider the entire record.  *Akhtar v. Mesa*, 698 F.3d 1202, 1209 (9th Cir. 2012) (quotation omitted).

The Department casts the motion to dismiss as both a Rule 12(b)(1) and a 12(b)(6) motion, MTD Br. 3–4, but does not elaborate any further on why any count of UHC's complaint should be dismissed for failure to state a claim.  MTD Br. 2 ("The DOI will not attempt to litigate the merits of its case in this motion.").  The law is not on the State's side, which perhaps explains why the Department's brief resorts to prudential and discretionary bases for dismissal.

Because all of the Department's arguments fall flat, its motion should be denied.

## I.    ALL OF THE DEPARTMENT'S ACTIONS STEM FROM AN IMPERMISSIBLE ATTEMPT TO REGULATE MEDICARE ADVANTAGE PLANS.

Congress wrote into the Medicare Act an explicit guarantee that Medicare Advantage plans cannot be subjected to state oversight, save for two narrow exceptions not applicable here.  The Idaho Department of Insurance cannot erode that protection by simply asserting that the federally regulated activity can be recharacterized as also falling within the state law it seeks to wield.  That is true even if the invoked state law is of general applicability—for example, an unfair trade practices law or a broader section of the state insurance code—rather than a Medicare Advantage-focused state law.  *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1149–50 n.25 (9th Cir. 2010); *see also, e.g.*, *Estate of Lokken v. UnitedHealth Grp., Inc.*, 766 F. Supp. 3d 835, 841 (D. Minn. 2025) (holding claims brought under the unfair trade practice statutes of Oregon, Minnesota, and California expressly preempted); *Estate of Barrows v. Humana, Inc.*, No. 3:23-CV-654, 2025 WL 2375645, at *13 (W.D. Ky. Aug. 15, 2025) (the Medicare Act preempted application of North Carolina unfair trade practices statute to Medicare Advantage plan).

All that matters to the preemption analysis is that the Department is seeking to regulate the actions of a Medicare Advantage plan where there is a governing federal standard at play.[1]  There

---

[1]  These federal standards are recounted in UHC's Complaint.  ECF No. 1 (Compl.) ¶¶ 48–49, 54–56.  Soon after UHC filed this action, CMS issued a memorandum confirming that "recent

can be no doubt that this is what the state agency is seeking to do here. *See* ECF No. 10-2 (Oct. 15, 2025 Bulletin extending unfair trade practices law under Idaho Code § 41-1321 to regulate Medicare Advantage plans); ECF No. 10-5 (applying that same statute in a cease-and-desist order against UHC).

That is true even for the agency's October 21 inquiry letter and the December 1 administrative penalty complaint that followed it. The inquiry letter was premised on the agency's assertion that "UHC has actively engaged in tactics to limit the number of Medicare Advantage (MA) plans sold in the state." ECF No. 10-4. And both documents demanded confidential actuarial information UHC had submitted to CMS as part of the Medicare Advantage bid process so the Department could investigate its preempted claims as laid out in the cease-and-desist order. *Id.* at 3 (seeking "a copy of the actuarial memorandum and any related supporting rate development documentation submitted to CMS which include the details of how commissions or other compensation were included in that process"); ECF No. 10-7 ¶ 13 (Dec. 1, 2025 administrative complaint threatening civil penalties for UHC's failure to provide the actuarial data submitted to CMS so the state can analyze the "commissions" and "other compensation" that were "submitted to CMS").

To make matters worse, the State has now suggested that it may open delicensure proceedings based on the inquiry letter and administrative penalty complaint. Even delicensure activities are federally preempted if they are premised on a state's effort to punish plans for actions that are covered by federal standards. CMS has made clear that licensure activities must be focused on ministerial organizational and filing requirements to survive preemption; "[s]tate licensing laws

_____

actions" taken by states like Idaho to regulate Medicare Advantage plans are likely preempted, citing CMS regulations covering the same subjects. ECF No. 13-1.

do not extend to rules that govern the activities of health plans on an ongoing basis even if compliance with such requirements is a condition for retaining a State license."[2]

Passing references to the Department's traditional "authority" to regulate unfair trade practices and "jurisdiction" over insurers also cannot overcome the preemption problem the Department has created.  MTD Br. 2, 3.  There is no thumb on the scale for the State here, because when a "statute contains an express pre-emption clause, [courts] do not invoke any presumption against pre-emption."  *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quotation marks omitted).  That precept has been applied to the Medicare Advantage express preemption provision.  *See Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emanuelli Hernandez*, 58 F.4th 5, 11–12 (1st Cir. 2023) ("*Franklin* forecloses us from applying the presumption against preemption in interpreting the Medicare Advantage Act's express preemption clause.").

## II.    UHC NEED NOT EXHAUST ADMINISTRATIVE REMEDIES.

The Department next argues that UHC should be required to exhaust its state administrative remedies before it may be heard on its preemption argument in federal court.  That is not the law.

### A.    The Department Fails to Identify an Applicable Exhaustion Requirement.

The Department claims exhaustion is a "statutory command," MTD Br. 4 (quotation omitted), but it has not identified any *federal* statute requiring exhaustion of administrative remedies before UHC's claims may be heard.  The only statute the Department cites as purportedly requiring exhaustion is the *state* APA, which is not applicable here.  MTD Br. 5–6.  Yet the only cases the

---

[2]  CMS Medicare Managed Care Manual, Chapter 10, § 30.1-30.2, https://tinyurl.com/yf3btt68. To the extent the Department argues that Idaho law escapes preemption because it does not target Medicare Advantage plans but rather Medicare Advantage *organizations* that offer those plans in Idaho, that argument has been considered and rejected.  *E.g.*, *Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emanuelli-Hernandez*, No. 19-CV-1940, 2021 WL 792742, at *10 (D.P.R. Mar. 1, 2021), *aff'd*, 58 F.4th 5 (1st Cir. 2023); *see also* ECF No. 13-1 (CMS memorandum including "[Medicare Advantage] *organization* activities" in its description of conduct that is beyond states' power to regulate) (emphasis added).

Department cites in which courts required exhaustion involved *federal* statutes imposing such requirements, not preemption claims brought under *Ex parte Young*, 209 U.S. 123 (1908), like those at issue here.[3]  The Department's remaining citations either found that exhaustion was *not* required,[4] or did not address exhaustion at all—in the context of a *state* declaratory-judgment action.[5]

This case is fundamentally different from *McNeil*, *Godman*, and *J. R. Simplot Co.*, *supra* n.3, because UHC's claims do not arise under a federal statute that requires administrative exhaustion.  UHC seeks to enjoin the Department from unconstitutionally enforcing Idaho law in a way that is preempted by federal law.  The Department does not try to explain how a state statute can supposedly impose conditions on claims arising under federal law.  It cannot.  *See Hook v. Arizona Dep't of Corr.*, 107 F.3d 1397, 1402 (9th Cir. 1997) ("[S]tate laws cannot stand in the way of a federal court's remedial scheme if the action is essential to enforce the scheme." (quotation marks omitted)).  Thus, the Department's exhaustion requirement fails at the threshold:  It fails even to identify a potentially applicable exhaustion requirement.

Because no statutory exhaustion requirement applies here, the State would be left with only a request for this Court to require exhaustion as a discretionary matter—although it does not appear to have made this argument.  *See* MTD Br. 5 (arguing that its asserted exhaustion requirement "comes from Idaho Code § 67-5271"); *Porter v. Board of Trs. of Manhattan Beach Unified Sch.*

---

[3]  *Viz. McNeil v. United States*, 508 U.S. 106, 111 (1993) (noting the express exhaustion requirement in the Federal Tort Claims Act); *Godman v. USPS*, No. 1:24-CV-132, 2025 WL 2051773, at *3 (D. Idaho July 22, 2025) (same); *Matter of J. R. Simplot Co.*, 640 F.2d 1134, 1137 (9th Cir. 1981) (finding that the federal Occupational Safety and Health Act's "statutory procedure contemplates exhaustion of the administrative remedies").

[4]  *Viz. Monroe v. Pape*, 365 U.S. 167, 183 (1961); *McNeese v. Board of Ed. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 676 (1963); *Bacon v. Rutland Ry. Co.*, 232 U.S. 134, 138 (1914); *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373, 376 (7th Cir. 1979); *Ace Black Ranches, LLP v. EPA*, 583 F. Supp. 3d 1313, 1325 (D. Idaho 2022); *Fuchs v. State*, 272 P.3d 1257, 1261 (Idaho 2012); *Harris v. Cassia County*, 681 P.2d 988, 994 (Idaho 1984).

[5]  *Viz. Miles v. Idaho Power Co.*, 778 P.2d 757, 761 (Idaho 1989).

*Dist.*, 307 F.3d 1064, 1070 (9th Cir. 2002) (discussing prudential exhaustion).[6] But courts do not require prudential exhaustion where it would not "serve the purposes behind the exhaustion doctrine." *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir. 1980). Those purposes are (1) to avoid "premature interference with agency processes" by giving the agency "an opportunity to correct its own errors," (2) to allow certain agencies to bring their "experience and expertise" to bear on any technical factual issues involved, and (3) to ensure the record "is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

Further proceedings before the Department would not serve any of those purposes. The Department has made crystal clear that it will not reconsider its unlawful attempts at regulating UHC's Idaho Medicare Advantage plans—as the Department's own brief confirms yet again. UHC's claims do not implicate any issue within the Department's unique expertise; this case presents purely legal questions about the scope of preemption under the federal Medicare Act and CMS regulations. *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir. 1993) (courts do not "require the benefit of agency expertise" where the issue "is one purely of statutory construction" (quotation omitted)). And no "detailed factual record" is required here for the same reason. *Id.*; *see also Mace v. Skinner*, 34 F.3d 854, 859 (9th Cir. 1994) (noting that an "administrative record . . . would have little relevance" to "constitutional challenges" to an agency's asserted power). This case is therefore inappropriate for any discretionary exhaustion requirement.

Even setting aside the absence of any exhaustion requirement in the first place, the Department's argument fails for three additional reasons. First, the State erroneously focuses on *judicial* remedies instead of administrative ones. Second, further administrative proceedings "would be a

---

[6] Because non-statutory exhaustion is a prudential doctrine, it is not jurisdictional. *See, e.g.*, *Sisley v. DEA*, 11 F.4th 1029, 1035 (9th Cir. 2021); *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990). For that reason, the State is also wrong to assert (at 4) that UHC was somehow required to address exhaustion in its complaint.

futile gesture." *SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (1981).  Finally, they would

cause UHC "irreparable injury" because the proceedings themselves "would be void." *Id.*

**B.      Judicial Remedies Are Irrelevant to Exhaustion.**

The Department repeatedly conflates administrative and judicial process.  Despite couch-

ing its argument in terms of "administrative remedies," MTD Br. 4, the State mostly argues that

UHC must ultimately "seek judicial review in state district court." *Id.* at 5–6.  That is a fundamen-

tal error.  No exhaustion requirement can apply to "state judicial, as opposed to administrative,

remedies."  *Gibson v. Berryhill*, 411 U.S. 564, 574 n.13 (1973) (quotation marks omitted).  It

would "defeat the purpose" of a federal claim to hold that its assertion "in federal court must await

an attempt to vindicate the same claim in a state court." *Oregon Env't Council v. Oregon Dep't

of Env't Quality*, 775 F. Supp. 353, 364 (D. Or. 1991); *accord Communities for a Better Env't v.

Cenco Refin. Co.*, 180 F. Supp. 2d 1062, 1087 n.10 (C.D. Cal. 2001).

This argument seeks to lure UHC into an impermissible "preclusion trap." *Jamgotchian v.

Ferraro*, 93 F.4th 1150, 1156 (9th Cir. 2024).  Federal courts may require administrative exhaus-

tion where it would serve specific litigation-sharpening functions "*prior to* judicial intervention."

*McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002) (emphasis added).

But challenging the Department's actions in state court would risk foreclosing UHC's federal

claims *entirely*.  If a state court rejected UHC's preemption claims, UHC might be barred from

asserting them in a later federal proceeding.  *See, e.g.*, *ReadyLink Healthcare, Inc. v. State Comp.

Ins. Fund*, 754 F.3d 754, 761–762 (9th Cir. 2014).  Even if UHC limited its state-law claims to

those brought under the Idaho APA, its preemption claims might nevertheless be barred by the

doctrine of claim preclusion on the theory that UHC "could have . . . brought" its preemption

claims in state court.  *See, e.g.*, *Monitor Fin., L.C. v. Wildlife Ridge Ests., LLC*, 433 P.3d 183, 188

(Idaho 2019) (quotation omitted).  Thus, if the State's exhaustion argument were to succeed,

UHC's "ability to have [its] constitutional claims heard in federal court would be conditioned on, but simultaneously threatened by, [its] resort to state court." *Jamgotchian*, 93 F.4th at 1156–57.[7]

That is not the law, and for good reason. The Department essentially argues that UHC's federal preemption claims—the merits of which it does not contest—are barred by a hypothetical state-court lawsuit UHC has not filed and does not intend to file.[8] The agency identifies no authority for that astonishing position. To the contrary, the Supreme Court recently confirmed that state exhaustion rules cannot create a "catch-22 [that] prevents the claimants . . . from obtaining a merits resolution." *Williams v. Reed*, 604 U.S. 168, 176 (2025). Even if that paradoxical requirement were a reasonable construction of Idaho law, this "heads-I-win-tails-you-lose result" would invalidate the Idaho APA as applied here. *Jamgotchian*, 93 F.4th at 1157.

At bottom, the Idaho APA has no bearing on this case. The sole issue presented by UHC's claims is whether federal law bars the Department from regulating Medicare Advantage plans in the ways reflected in its actions against UHC. *See* Compl. ¶¶ 88–105. The Court need not interpret "an Idaho statute" to determine its "applicability" to any facts, *contra* MTD Br. 6, and the Department fails to identify any basis for holding that state law somehow overrides UHC's federal claims.

### C.    Exhaustion of Administrative Remedies Would Be Futile.

Even if all of these hurdles could be overcome, another one looms: Exhaustion would be futile on these facts. The Department's argument hinges on the suggestion that *the Director*

---

[7]  The State has already attempted to spring a similar preclusion trap on PacificSource. In moving to dismiss that insurer's complaint, the State argued federal preemption claims would amount to an impermissible collateral attack on a state-court judgment. *PacificSource Cmty. Health Plans v. Cameron*, No. 1:25-CV-638 (DCN) (D. Idaho Nov. 21, 2025), ECF No. 9-1 at 10–11.

[8]  Further illustrating this confusion, the Department erroneously describes UHC's case as a "state action" that "was removed to federal court." State Br. 6. Not so. UHC's claims are purely federal and always have been: UHC seeks to vindicate the federal Medicare Act's preemptive effect under the federal Constitution by pursuing an equitable cause of action created by federal courts. *See Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018).

*himself* might have changed his mind if UHC asked just one more time, raising precisely the same preemption arguments he has already rejected several times now.  But litigants need not waste time by pursuing administrative remedies offering zero chance of success.  *E.g.*, *El Rescate Legal Servs., Inc. v. Executive Off. of Immigr. Rev.*, 959 F.2d 742, 747 (9th Cir. 1991).

Like the agency in *El Rescate*, the Department of Insurance has already "announced and reaffirmed" its position on whether it can regulate UHC's Idaho Medicare Advantage plans.  959 F.2d at 747.  All its actions ultimately stem from its October 15, 2025 Bulletin, where the Department unveiled the novel claim that it can regulate Medicare Advantage plans under the pretense of enforcing state unfair-trade law.  Compl. ¶¶ 36–37.  Since then, it has ignored a cavalcade of contrary evidence:  UHC has repeatedly explained to the Department why its actions are preempted by federal law, including by walking through the phalanx of CMS regulations covering the same subjects as the Department's orders and demands for information.  *See, e.g.*, *id.* ¶ 43; ECF No. 10-6 at 1.  Following the Department's efforts to regulate, CMS released a public memorandum addressed to state insurance regulators explaining that "recent [state] actions . . . related to agent and broker compensation" are "likely preempted" because the federal agency has already "adopted standards that govern most, if not all, of the areas listed above."  ECF No. 13-1 at 1.  And perhaps most importantly, this Court has temporarily restrained the Department from enforcing the same regulatory positions at issue here, finding them likely preempted because "both [state and federal] regulations cover the same underlying conduct."  *PacificSource Cmty. Health Plans v. Cameron*, No. 1:25-CV-638 (DCN), 2025 WL 3485747, at *4 (D. Idaho Dec. 4, 2025).

Each of these decision points gave the Department an opportunity to reconsider.  Time and time again, it doubled down instead.  The State just did so once more in filing this motion to dismiss:  Its brief announces (at 5) that UHC is acting "in defiance" of the Department's unlawful

cease-and-desist order, repeats (at 2) its unsupported (and false) allegations about the nature of UHC's underlying conduct, and even threatens (at 4) to "seek the revocation of UHC's certificate of authority to sell insurance in Idaho"—a stunning escalation that would hurt the very Idaho seniors (and Idahoans enrolled in other UHC health plans) the Department claims to be protecting. Put differently, the Department is telling this Court exactly how further administrative proceedings would come out, while in the same breath arguing that UHC's preemption claims challenging those proceedings might have prevailed if repeated once more. As if all this were not enough, when PacificSource *did* seek reconsideration of a related cease-and-desist order, the Department apparently did not bother to respond. *PacificSource Cmty. Health Plans v. Cameron*, No. 1:25-CV-638 (DCN) (D. Idaho Dec. 8, 2025), ECF No. 15 at 6.

The outcome of any further administrative proceedings is far more evident here than in other cases where the Ninth Circuit has found exhaustion futile. As the court emphasized in *Vasquez-Rodriguez v. Garland*, for example, futility requires only that the claimant would "very likely"—not certainly—have lost in any further administrative proceedings. 7 F.4th 888, 896 (9th Cir. 2021) (quotation omitted). That standard was satisfied where agency precedent was unfavorable for the claimant, even though the agency did "not follow an absolute rule of stare decisis." *Id.* at 897. Likewise, in *El Rescate*, the Ninth Circuit found it "unrealistic" to suppose the claimant might have prevailed in administrative proceedings where the agency had applied a contrary rule in other instances. 959 F.2d at 747–748. And in *Briggs v. Sullivan*, 886 F.2d 1132, 1141 (9th Cir. 1989), the court found futility where it was "reasonable to operate on the assumption" that claimants would not prevail before the agency because of the same policy at issue in federal litigation.

Unlike in those cases, there is no need to read tea leaves or scrutinize Department of Insurance precedent here. In any further agency proceedings, UHC could be subject to draconian sanc-

tions based on an interpretation of Idaho law this Court has found likely preempted. MTD Br. 4–5. Far from supporting dismissal of UHC's complaint, this admission highlights the urgent need for injunctive relief to prevent UHC—and Idaho consumers—from suffering irreparable harm.

### D.    Proceedings Before the Department of Insurance Are Constitutionally Void.

The State's exhaustion argument also fails to account for the nature of UHC's federal claims. UHC has demonstrated that *all* of the Department's actions at issue—the Bulletin, the October 21, 2025 inquiry letter to UHC, the cease-and-desist order, and the December 1, 2025 administrative complaint—are completely preempted because the Department lacks *any* authority to regulate Medicare Advantage plans' enrollment, marketing, or commissions practices. Compl. ¶¶ 45–87; ECF No. 10-1 at 12–19; *supra* pp.3–5. Yet the State proposes that UHC pursue these claims by prolonging the very same administrative proceedings before the Idaho Department of Insurance that UHC is challenging as preempted. MTD Br. 5. That is a contradiction in terms; the way to resolve the Department's usurpation of federal authority is to seek an injunction terminating its administrative proceedings, not to pursue even more preempted process.

The Ninth Circuit has long recognized that a claimant need not exhaust remedies in "[a]n administrative proceeding infected with fundamental procedural error." *Winterberger v. General Teamsters Auto Truck Drivers & Helpers Loc. Union 162*, 558 F.2d 923, 925 (9th Cir. 1977). One example of such an error is state action that is "*per se* preempted" by federal law. *See, e.g.*, *Friends of the E. Lake Sammamish Trail v. City of Sammamish*, 361 F. Supp. 2d 1260, 1272 (W.D. Wash. 2005) (finding "no administrative remedies requiring exhaustion" under those circumstances). In this scenario, forcing a litigant to further engage with a powerless agency "cannot remedy the harm" because the very fact of being subject to the agency's jurisdiction is "the deprivation of the right" at issue. *See N.D. ex rel. Parents Acting as Guardians Ad Litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010). Put differently, a preemption claim of this nature "do[es]

not seek review of an agency ruling"—it seeks to *prevent* an agency ruling. *Cf. Affiliates, Inc. v. Armstrong*, No. 09-CV-149, 2010 WL 11646730, at *4 (D. Idaho Jan. 22, 2010) (finding no exhaustion requirement where the plaintiff alleged that an Idaho agency violated federal law).

UHC's claims fit this mold because federal law completely preempts the Department's asserted power. Congress has abrogated state authority to enforce "*any* State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans." 42 U.S.C. § 1395w-26(b)(3) (emphasis added). That includes generally applicable state consumer-protection laws, *Do Sung Uhm*, 620 F.3d at 1149–50, and state laws that are not necessarily inconsistent with federal standards, *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022). Tellingly, the Department has never attempted to argue that any of its challenged actions target licensure or plan solvency. *See* 42 U.S.C. § 1395w-26(b)(3). Nor could it, given CMS's clear pronouncement that these exemptions may not be used as a pretext for regulating the standards applicable to Medicare Advantage plans. 70 Fed. Reg. 4,588, 4,664–65 (Jan. 28, 2005) ("[L]icensure and solvency requirements cannot be used as an indirect method of imposing State regulatory requirements that a State might impose on non MA health plans" and "cannot be used as an indirect way to regulate MA plans by imposing requirements not generally associated with licensure."). The Department has no authority here, as CMS has just made clear. ECF No. 13-1 (directing state insurance agencies to raise any "concerns . . . related to [Medicare Advantage] organization activities in your state" with CMS). Thus, there is no basis for compelling UHC to engage with the Department further on these issues.

The inappropriateness of further agency proceedings is underscored by the irreparable harm it would cause UHC. Because the Department has no legitimate regulatory authority here, sending UHC back to the agency would cause it "hardship [from] the process itself." *See Hawaii*

13

*Newspaper Agency v. Bronster*, 103 F.3d 742, 747 (9th Cir. 1996) (quotation omitted); *cf. also American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1058–59 (9th Cir. 2009) (recognizing that constitutional violations impose per se irreparable harm). In addition, the Department has now made clear that it will take every opportunity to reiterate its injurious (and, again, false) allegations that UHC is somehow hurting Idaho consumers. *E.g.*, MTD Br. 2. Mandating further proceedings before the Department would give the Department yet another platform from which to broadcast these claims, causing UHC further irreparable harm by damaging its reputation in Idaho. *See, e.g.*, *American Trucking Ass'ns*, 559 F.3d at 1057. For both reasons, an exhaustion requirement is especially inappropriate here. *See Aleknagik*, 648 F.2d at 499 (exhaustion not required "[w]here irreparable injury will result unless immediate judicial review is permitted").

E.    **This Case Is Not Purely a Declaratory Judgment Action.**

Finally, the Department suggests that the theoretical availability of state remedies means the Court should decline to hear this case under the Declaratory Judgment Act. MTD Br. 7 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *see also* ECF No. 14 at 1 (seeking "an order dismissing Plaintiff's Complaint for Declaratory Judgment"). This argument entirely ignores UHC's request for injunctive relief. Compl. at 30. The principle recognized in *Brillhart* does not apply to actions seeking an injunction because that relief "would be viable without the declaratory claim." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1040 (9th Cir. 2013) (quotation omitted); *accord American Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 633 (9th Cir. 2018). As explained above, *supra* p.6 & n.8, UHC's cause of action does not depend on 28 U.S.C. § 2201, but on the equitable cause of action first recognized in *Ex parte Young*. *Moore*, 899 F.3d at 1103.

In any event, the State's *Brillhart* argument fails equally on its own terms. Defendant concedes that two of the three *Brillhart* factors do not apply at all, resting solely on the supposed need to "weigh various state statutes" to decide this case. MTD Br. 7 & n.20. But again, UHC's

claims do not call for any interpretation of state law because they are solely about *federal* law's preemptive scope. *Supra* p.6. The only thing the Court need say about Idaho law here is that it cannot be applied to regulate Medicare Advantage plans in the ways the Department has attempted to apply it. That distinguishes *Huth v. Hartford Insurance Co. of the Midwest*, 298 F.3d 800, 804 (9th Cir. 2002), where the federal action raised a "purely state law issue."

## III.    THIS COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION.

The Department's abstention arguments also fail. "[A]bstention from the exercise of federal jurisdiction is the 'exception, not the rule.' " *Roshan v. McCauley*, 130 F.4th 780, 785 (9th Cir. 2025) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 82 (2013)).[9] "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 63–64 (9th Cir. 2024). The Department must satisfy each of these prerequisites to justify this Court's application of *Younger* abstention. It has not. And even if it had, a federal court should nevertheless hear a case when constitutional or preemption issues are "readily apparent." *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1022 (9th Cir. 1999). Thus, for multiple independent reasons, *Younger* abstention is unwarranted here.

### A.    There Is No Ongoing State Proceeding.

The Department stumbles at the outset of its abstention argument: It has pointed to no state proceeding into which this Court's review would intrude that was "ongoing" at the time UHC filed

---

[9] The Department repeatedly inverts the thrust of the abstention doctrine. *E.g.*, MTD Br. 13 (erroneously contending that "[t]he only time dismissal from federal court is discouraged is when a state proceeding canno[t] adequately protect the right of a litigant"); *id.* at 9 (asserting without support that *Younger* is "especially" applicable in cases for injunctive or declaratory relief). The Department is wrong, as is its treatment of *Younger* as de facto warranted in all situations seeking equitable relief. *See Roshan*, 130 F.4th at 785.

its federal action.  As a preliminary (and fundamental) matter, the Department concedes that the cease-and desist order on which it bases its entire abstention challenge is a "*final order*."  MTD Br. 5 (emphasis in original).  That an agency action may inflict continuing injury on a party does not render it "pendent," "ongoing," or "perpetual"—to the contrary, it renders those "direct and immediate" effects ripe for review.  *E.g.*, *Association of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000) ("[A]gency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action.").

After this lawsuit was filed, the Department subsequently filed an administrative complaint against UHC related to certain actuarial information the company has declined to provide the Department, *see supra* pp.1–2, 4.  Nowhere does the Department's motion to dismiss mention that complaint, let alone assert that it could be the basis for *Younger* abstention.  It has thus forfeited any such argument.  *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (arguments not raised in opening brief are deemed forfeited).  In any event, the administrative complaint cannot justify abstention for multiple reasons:  It post-dated UHC's federal action, the Department has failed to explain how a demand for information fits within the *Sprint* exceptions, and it, too, flows from the Department's unlawful October 15, 2025 Bulletin.

That just leaves the Department's vague threats of future enforcement.  "It has long been established that the mere threat of state enforcement is insufficient to justify federal court abstention."  *Seattle Pac. Univ.*, 104 F.4th at 64.  Although the Department conjures up numerous *hypothetical* state proceedings, none of those proceedings were underway when UHC filed its federal action.  That is fatal:  "*Younger* abstention does, in fact, depend on the 'technicality' of ongoing [state] proceedings."  *Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1002 (9th Cir. 1995); *accord Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987) ("[T]he critical question is . . .

whether 'the state proceedings were underway before initiation of the federal proceedings.' "). A litigant may not use the vague threat of some nebulous "future proceeding" to keep a federal court from honoring its " 'virtually unflagging' obligation to decide cases" within its jurisdiction. *Stockton v. Brown*, 152 F.4th 1124, 1135, 1141 (9th Cir. 2025) (holding *Younger* abstention did not apply to physician's claim for injunctive and declaratory relief).

For a related reason, the Department has not explained how its theoretical state proceeding fits within the narrow set of exceptions that would bar federal court review. The Supreme Court has made clear that only three types of proceedings trigger *Younger* abstention: criminal prosecutions; "civil proceedings that are akin to criminal prosecutions"; and proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns*, 571 U.S. at 72–73. "If a proceeding does not fit within this taxonomy, *Younger* abstention will not lie." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015). All the Department offers in support is an assertion that *Younger* applies to "quasi-judicial proceedings," pointing to nothing other than the existence of a final cease-and-desist order to somehow justify the application of an exceptional, fact-specific doctrine.[10] That is insufficient.

**B.    There Is No Adequate State Remedy.**

The Department also fails to satisfy the fourth *Younger* factor. As this Court has previously held, "*Younger* abstention [is] inappropriate" when "the plaintiffs c[annot] raise their constitutional challenges before suffering an administrative injury." *Witzke v. Idaho State Bar*, 647 F.

---

[10]   If the Court does not find the Department has forfeited any argument about the effect of the administrative complaint, the Department has made clear its view that an administrative complaint under Idaho Code § 41-247 is not such a proceeding and instead is simply a request for information. *PacificSource Cmty. Health Plans v. Cameron*, No. 1:25-CV-638 (DCN) (D. Idaho Dec. 15, 2025), ECF No. 21 at 3.

Supp. 3d 943, 953 (D. Idaho 2022).[11]  In its motion to dismiss, the Department threatens to initiate (but again, has not actually initiated) delicensure proceedings against UHC—proceedings that would result in exactly the type of "administrative injury" this Court described in *Witzke*.  *See id.* at 953 (explaining that after administrative proceedings concluded, "the Board of Pharmacy could enter an order immediately suspending or revoking the license and permit before judicial review") (citing *Adibi v. California State Bd. of Pharmacy*, 393 F. Supp. 2d 999, 1009–10 (N.D. Cal. 2005)). The Ninth Circuit, too, has recognized that when a plaintiff "never had the opportunity, before [being penalized], to have a state court consider the merits of his federal constitutional claims," it is "appropriate for the district court not to abstain from hearing" the plaintiff's case.  *Meredith v. Oregon*, 321 F.3d 807, 820 (9th Cir. 2003).  Here, as in *Witzke*, *Adibi*, and *Meredith*, the relevant provision of the Idaho Code permits the Department to initiate delicensure *before* state court review.  *See* Idaho Code § 41-327.[12]  As a result, it matters little that UHC could theoretically raise a preemption challenge in Idaho state court—if the Department is taken at its word, UHC will be unable to do so before the State causes even more irreparable harm.

### C.    Preemption Is Readily Apparent.

Finally, even if the Department had managed to point to some state proceeding justifying abstention, its *Younger* argument fails on another fundamental basis:  The doctrine does not bar federal review of an action where "federal preemption of the state law at issue is 'readily

---

[11]  The Department does not cite *Witzke* in its discussion of "adequate remed[ies]," and for good reason:  *Witzke* reached the opposite conclusion on *Younger* than the Department urges here.  *See* 647 F. Supp. 3d at 955 ("As the Court has concluded that only three of four elements in the *Younger* test articulated above have been met, *Younger* abstention is inappropriate in this matter.").  *But see PacificSource Cmty. Health Plans v. Cameron*, No. 1:25-CV-638 (DCN) (D. Idaho Dec. 15, 2025), ECF No. 20 at 7 (Department claiming that *Witzke* is "exactly on point").

[12]  In *Roshan*, the Ninth Circuit cited an express provision of the relevant California Code that allowed the plaintiff to raise his constitutional claims and did not comment on the timing issue UHC has flagged here.  130 F.4th at 782.  The case is therefore inapposite.

apparent.' " *Woodfeathers*, 180 F.3d at 1021 (alterations adopted); *accord Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991) ("No significant state interest is served where the state law is preempted by federal law and that preemption is 'readily apparent.' "); *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367 (1989) (noting that a "facially conclusive" claim of preemption may be "sufficient to render abstention inappropriate").

Preemption could hardly be more "readily apparent" than it is here. To wit: (1) there is an express preemption provision in the Medicare Act that explicitly covers all relevant state actions in this case, 42 U.S.C. § 1395w-26(b)(3), (2) as CMS squarely explained less than three weeks ago, *see* ECF No. 13-1; (3) the Ninth Circuit has already held that the Medicare Act preempts state regulation in this area; and (4) so has this Court. *See supra* pp.3–5, 10.

An express preemption clause is "by itself, [a] sufficient basis for the district court to hear [the] claim." *Hughes v. Attorney Gen. of Fla.*, 377 F.3d 1258, 1271 (11th Cir. 2004). The Ninth Circuit has therefore explained that federal preemption is "readily apparent" "where the state law f[alls] under the express preemption clause" of the relevant federal statute. *Woodfeathers*, 180 F.3d at 1021 (citing *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir. 1984)). And this Court has *already recognized*—in two different proceedings—that preemption applies to the Department's actions. *PacificSource*, 2025 WL 3485747, at *4; *UnitedHealthcare of the Rockies v. Cameron*, No. 1:25-CV-665 (DCN), 2025 WL 3707229, at *4 (D. Idaho Dec. 22, 2025). In granting these two TROs, the Court correctly noted that the Medicare Act's preemption provision is "exceedingly broad" and covers the Department's Bulletin and any actions flowing from it: "If the federal standard regulates in the same domain as state law—even if the state law is consistent with the federal standard, and even if the state law is generally applicable—the state regulation is preempted." *UnitedHealthcare*, 2025 WL 3707229, at *3. And after analyzing some of the

relevant regulations, the Court concluded "UHC is likely to succeed in arguing that [CMS regula-tions] regulate the same domain as Idaho law with respect to the delivery and clarity of enrollment materials." *Id.* at *4. If that were not enough, CMS's recent memorandum crystallizes the point: It explains that the agency "has adopted standards that govern most, if not all" of the "recent ac-tions taken by" states like Idaho. ECF No. 13-1. The Medicare Act's express preemption provi-sion clearly forecloses the Department's actions, and thus also forecloses *Younger* abstention.

But there's more: The Ninth Circuit, too, has held that state consumer-protection laws—like those at issue here—are preempted by the Medicare Act. *See Do Sung Uhm*, 620 F.3d at 1149–50. The court in *Uhm* explained that, first, "Congress intended to expand the preemption provision beyond those state laws and regulations inconsistent with the enumerated standards." *Id.* And second, it walked through the provisions in both the Medicare Act and its implementing regulations that explicitly cover marketing materials, enrollment forms, and "any other information necessary to enable beneficiaries to make an informed decision about enrollment" in the Medicare Part D context. *Id.* at 1151. Substantially similar regulations govern under Medicare Part C. Compl. ¶¶ 48–49, 54–56; ECF No. 10-1 at 3–5. Given this on-point authority, "federal regulatory jurisdiction . . . ha[s] previously been determined," and preemption is thus "readily apparent." *See Woodfeathers*, 180 F.3d at 1021–22. The Department does not even dispute that UHC pleaded viable preemption claims, conceding that it faces a "challenge ahead of it on preemption grounds." *PacificSource Cmty. Health Plans v. Cameron*, No. 1:25-CV-638 (DCN) (D. Idaho Dec. 12, 2025), ECF No. 20 at 2. It is hard to imagine a case less appropriate for *Younger* abstention.

## CONCLUSION

The Court should deny the State's motion to dismiss.

Dated: December 23, 2025

Respectfully submitted,

*/s/ Wendy J. Olson*

Wendy J. Olson
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
wendy.olson@stoel.com

Susan Cook*
Marlan Golden*
Jacob Young*
Delia Scoville*
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
susan.cook@hoganlovells.com

*Attorneys for Plaintiffs*

*\*Admitted pro hac vice*